325-0182 Board of Education of Winfield School District 34 v. College and Board of Education of Community High School 325-0182 Four of the six buildings CDH is developing are stand-alone retail buildings that could never be tax-exempt, and there's no claim that any portion could potentially be tax-exempt by the village in this case. With respect to the other two buildings, mixed-use buildings, under the development agreement, the parking deck itself, the entire first floor is approximately just over 23,000 square feet of commercial and retail use. Again, no basis for even assuming that there could be potential exemption for that portion, and the village doesn't claim that in this case. Likewise, the medical office building has mixed-use on the first floor as well. No claim that that portion would ever be exempt from property tax. The village doesn't claim that. So even if the court could have engaged in this hypothetical scenario to analyze the plan language of the TIF Act, it's clear that substantial growth in property tax revenue still would have flowed even if there had been an application for exemption from CDH, which there was not. Just to circle back on the But-For test, the statute also requires that the village make findings of fact documenting that the But-For test is met and include evidence in the development plan. There simply was none here. The development plan adopted by the village makes no mention of all of this private investment and development activity that was occurring through the CDH development agreement, and it simply contains conclusory and vague findings unsupported by fact. Indeed, the village's own TIF consultant admitted at his deposition that the following statement in the redevelopment plan is not accurate. The area has been burdened with a lack of significant private investment and or development. There was no rational basis for the village to make this finding that TIF District 2 satisfied the But-For test. We also address the issue of whether the TIF Act satisfies a substantial benefit and contiguity requirement. I'll briefly touch on that issue. The village seems to argue that they don't need to meet that requirement at the outset, but if you look at the plan language of the statute, it specifically says that no redevelopment project areas shall be designated unless, and then it goes on to say that the areas will only include those contiguous parcels of real property and improvements substantially benefited by the proposed redevelopment plan. It's simply not true. There's no statutory support for the idea that the village could simply put parcels in and then 20 years down the road justify and defend how these parcels are going to benefit. Thank you. Go ahead. You can wrap up your last comment. Yeah, I will just say with that, I would rest on our briefs on the other issues we raise on appeal, and I will reserve for rebuttal. Thank you. You'll have five minutes to rebuttal. Thank you. All right. Mr. Smith, ready to proceed? Good morning, everyone. May it please the Court. My name is Neal Smith with the Bond Conway Law Firm. I represent Pele Village of Linfield in this matter. Now it comes to you today on summary judgment, of course, for Judge Chapman earlier this year and Judge Wheaton in 2022 on one issue. In 2021, the village established TIF II. It did so by ordinance, and two of the issues that are at play today and that they found then when they adopted their ordinances is the But-For test. They made findings to establish the But-For test, and they made findings to establish that at least three of 13 conservancy, conservation area eligibility factors are established. Now, I'm going to get into both of those findings, but first I want to talk about standard of review in this case, and I didn't hear counsel talk about that. I think I know why. I think it's because it's not favorable to him. It's de novo, of course. It comes to you on summary judgment, so it's, of course, de novo review. But the prism that you have to view this case through is the prism of what the trial court also had to view it through, and that's the clearly and convincingly standard. The village made findings in its ordinances, by ordinance, and those findings are presumed valid. They're presumptively valid, and that's a very high burden. It's the clearly and convincingly standard. What does that mean? Clear and convincing evidence is that which leaves no reasonable doubt. It is evidence that leaves the mind well satisfied with the truth of a proposition, strikes all minds alike as being unquestionable, and leads to but one conclusion. Wrapping this up, the prism that you have to view this through, in order for the school districts to withstand the village's summary judgment motion and to win their own summary judgment motion, they were required to present evidence such that the reasonable trier effect could find that they have established by clear and convincing evidence that the village's but-for and eligibility findings were wrong. They don't do that. I'll start first with the but-for test. Really, their only evidence is the development agreement itself, and that's no evidence at all, because the development agreement with CDH was part of the plan. The but-for test says you look at TIF area on the whole. Has it been subject to growth and development through investment by private enterprise? And would it not reasonably be anticipated to develop without the adoption of the TIF? Courts have said that this growth and development, that is growth and development that increases the value and the tax basis of the property. And that was very critical to Judge Chapman below in his order, because when the village met as a legislative body, they were faced with just CDH. CDH's footprint there in Winfield is massive, and it butts right up against their town center area, the town center area where they desire to have a pedestrian-oriented downtown, shops and restaurants, places people walk to and patronize. So they're butting up against each other. And CDH has made it well known for a long time that they are critically short on parking. They don't have the parking necessary that other hospitals in the area have. They're critically short. So the village was faced with development that was only parking development. So what did they do? They made part of the plan, is to enter into a development agreement with Central DuPage Hospital. And maybe I can narrow this in. So obviously in this area, you use that leverage, understandably, that you had with the hospital. They needed parking bad. I'm gathering that from all sides. So you used it to cut a good deal for the city and get additional benefits in the way of development. The issue to me seems that there are 24, and I'm bad with math, 25 parcels left, right? The issue is, correct me, in the issue, the parcels that are left, was there evidence that those are not going to develop? I understand that the other side is saying, look at what the hospital did. It can't be denied. It developed without necessarily the TIF. But the rest of the parcels, is there evidence that those, without a TIF, they're just going to sit there? They're not going to be able to progress and move to where the village wants them to be for this development? And there is that evidence. And the evidence is that the decades-long failure of the private sector alone to bring about commercial development there. The village has had a TIF-1 in place in 2004. And the property in TIF-2 was formerly in TIF-1. But TIF-1 only brought about development that was TIF-incentivized development. Condo units and a commercial structure. So, one of the findings the village made, that development's not going to come about, except for the TIF, is the historical evidence that they had lived with. I mean, they're village representatives in that town. They know well that there's a two-decade failure of the private sector alone to bring about development. So that was one of the components of that blackboard test. The other is the conservancy factors themselves. I mentioned before, the village has to find at least three of 13 factors are satisfied. And it's those factors also that contribute to the finding. Basically, because these factors are here, these are going to drag down the prospects of the area they develop. So that's the findings, I hope that answers your question. And again, the prism is clearly and convincingly wrong here, also. So, with those findings having been made, also with knowing what CDH desires, this tackles them to parking. The village board made a decision, they made a decision to adopt this TIF. And as it turns out, not part of their findings when they made it because it couldn't be, but it is very much played out that TIF is needed. There is a development waiting in the wings, synergy development, waiting in the wings to develop a nearly 150-unit apartment building right in TIF 2 that says we need TIF incentives to go forward. The only way we're going forward is with TIF incentives. There is a bakery that has said, we're happy to locate here, but the only way to do it, we need TIF incentives. And so those have played out, even after the village made their findings, made their legislative findings, that the Butford test was successful. The village kind of already tipped its hand on that issue. Pardon? When you say the village had already tipped its hand at that point, if they came in after the fact that you made it public you were creating a TIF district, and they came in and said, who wouldn't, if you're a business? I'm just... Not a big deal, but... Yeah, and my comment to that is that even the school district's own expert noted that the TIF he sees, developers come in and say, I'd like to build here, but you'll have to give me a TIF first. I don't see a great distinction there with developers. Developers, if there's a TIF, they look for incentives. But even if there's not a TIF, developers, the ones that are coming in and doing transformative things, know about TIF, and they know how to politically push for that. Why couldn't they do transformative things under TIF 1? Well, they did do a few things on TIF 1. And the things that happened were because of TIF 1. There was a kind of development on a formerly industrial site that was vacant and underutilized, non-utilized for decades. And then there was another commercial development. So TIF 1 did do big things, but it didn't... The only things that happened in the downtown were because of TIF 1. TIF 1's expiring. Yeah, but, I mean, let's look at the developer. Couldn't he or she or it have benefit under TIF 1? Could they have developed... So, I mean, how does that add to TIF 2, the palatability of TIF 2, if they could have had same or similar benefits under TIF 1? Well, TIF 1's expiring. TIF 1 is going to end in 2027. And so developers looking for a long-term incentive, a long-term... Okay, that answers my question. Thank you. It's ending, yeah. And I heard the school district talk about, well, why couldn't the village just extend TIF 1? But the legislature won't extend TIFs for another 12 years unless the school districts agree. And as you can see, they're here litigating this. There was no agreement to be had. So TIF 2 was the option. So they, you know, so the evidence found by the village ordinance, and also even after the village made its findings, all point to development's only going to happen with the Sims. And again, their only evidence is not evidence at all. It's the development agreement. It's the development agreement that Judge Chapman noted is part of the plan. It's part of the village's plan here. Now, one of the other factors the village had to find was the conservation area eligibility factors. This is the 13 conservation area factors listed. You have to satisfy at least three. The village found at least five. The village board found five. Judge Chapman agreed there was no question of material fact of at least three of those. That's why he granted summary judgment. Those are declining lagging EAD, an objective issue. That's just an objective issue. That's just, that's crunching numbers. Chapman found in favor of the village there. The obsolescence factor. I think for the obsolescence factor, the village's expert, the best way I've described it is it was a non-opinion, and he really couldn't say one way or the other whether it was there or not. He just, you know, he quibbled with the village's efforts, but he couldn't say one way or the other whether it was there or not. It was a non-opinion. Same too with the deleterious land use and layout finding. Their expert, it was a non-opinion. He couldn't say one way or the other whether it was there or not. He had his quibbles. He had his, you know, said he would have done it a different way, but he couldn't find that it wasn't there. And again, their burden, the prism you're looking through here, to clearly and convincing evidence doesn't even come close. The deterioration factor. The village found deterioration on the building, the surface improvements. Becker, their expert, acknowledged deterioration, some deterioration. And Judge Chapman found in favor of the village because, again, the burden of proof here, they don't satisfy. And then the final conservancy area factor, lack of community planning. As Judge Chapman noted, the development before the development happened, before the comprehensive plan of the village was enacted, so kind of unguided development earlier in the village's history. Inadequate street and intersection issues. And thereafter, the school district's expert couldn't rule out incompatible uses. And he acknowledged traffic backups and intersection issues. And again, Judge Chapman ruled in the village's favor on this one. So Judge Chapman, in his view, established three out of this 13. And he made those. I'm going to address one thing that the schools didn't get to, and that's the DTIP-RETIP issue. Judge Wheaton ruled in the village's favor a long time ago in 2002, 2022 on this issue. This was a pretty straightforward legal issue. And basically, the village took property out of TIP 1 and put it in TIP 2. The school district has a problem with this issue, but they cite not a single place where it is prohibited. And in fact, I mean, it's allowed. The TIP Act says property that is not in a TIP can be in a TIP. And you have to... And what they ignore here, the school districts ignore here, is that when you take property out of TIP 1, this TIP 1 has been frozen. The EAB for TIP 1 has been frozen since 2004. You take it out of TIP 1, and now the EAB comes up to present values. So it was then frozen at 2021 values. So it's not a continuation on TIP 1. It's a new TIP. It's property in a new TIP that's frozen at 2021 levels. They don't... There's no statutory authority. The village was fully able to do that. And you can imagine the public policy harms that would come about if the village couldn't do that. It'd be a one-and-done situation. Property is TIP'd once, it can never be TIP'd again, no matter how blighted or much it needs development. Lastly, I want to talk about the inclusion of the 11 parcels north of High Lake Road there. Is that the continuity issue? Yeah, it's the continuity, kind of the shorthand we've used here. But really, I mean, it's really not a continuity question. I mean, there's no question that this TIF is contiguous. The property is contiguous. Really, it's about if you excise these 11 parcels from the TIF, would the TIF be contiguous? No, but that's the same. That's the case with any TIF. So there's no statutory authority there for the argument. So I'll take any questions if there are. Sure. Justice Anderson, do you have any questions? I do not. Okay. Thank you, Neil. Five minutes and we're off. Sorry, I know you want your last call. Okay. We have no further questions. Thank you very much for your time. Thank you. Counsel? All right. I'll start with the standard, the clear and convincing evidence, the argument counsel made that the development agreement, according to counsel, the development agreement with CDH is not evidence at all. I take great issue with that. It's clearly evidence. It's the very evidence the But-For test asks us to look at. And if I understand the village's argument, their argument is that we have not, the school districts have not marshaled clear and convincing evidence to defeat the But-For test. But all we have to do is, again, look back at the Village of Brewer Ridge and Castile Properties cases. In those cases, there was merely development interest. It hadn't even happened. It was commercial interest in development that the village either blocked or didn't go forward. And the trial court and appellate court in both of those cases found that was more than enough evidence to defeat the But-For test. The evidence we've marshaled here is much stronger than that. We have a $90 million development agreement that's signed, sealed, delivered, and well underway 14 months prior to the TIF II being created. There's absolutely clear and convincing evidence in this case. There's 12 building permits that were issued in the years leading up to this. Ample investment by CDH to buy properties in the area for purposes of  There's ample and clear and convincing evidence to defeat the But-For test. I'd also like to address the question that was raised earlier about what about the remaining parcels. And one thing that really hasn't been focused on here is, and we identified this in our brief, and we identified it in the trial court. The ownership, there's 51 parcels in TIF II. CDH owned 34 of those parcels. And the development agreement was covering 26 of the 51. What's left over? There's a Chase Bank. It covers about two parcels in active business. And there's a restaurant that's also in active business in terms of the privately owned property. The remaining parcels, 14 parcels that are left, are all owned by governmental bodies, including the village, the fire district, the forest preserve, and the regional transit authority. Why is that important? We don't expect governmentally owned parcels to attract private investment and development. They're not being used for private purposes. So it's clear here that the But-For test, even if you look at the project area as a whole, clearly was not met by the TIF II ordinances adopted by the village. Council mentioned the synergy and development interest in the bakery. As we've argued before, under the plain language of the statute, it would be error to even consider those. Clearly, it's not surprising that somebody would go to the village and ask for TIF assistance. The legal issue that's important here is that the statutory But-For test, which the village conceded in the trial court, by its plain language, looks at the state of the project area at the time the ordinances were adopted. Specifically, the But-For test asks whether the project area has been subject to. That's past tense. It's looking backwards and at that point in time. It also asks, can we anticipate at the time the TIF district is created that development would occur without TIF? It's a point-in-time analysis by the plain language of the statute. Regardless, even if it could be considered, the synergy proposal is in the far east corner of this TIF II area. It cannot be used, A, because it came about two years after the fact. More importantly, it doesn't create a basis to find that the project area as a whole would not develop without TIF when you look at the CDH development agreement. It seems to me that some of these issues that you consider in connection with the But-For test seem kind of fact-intensive. It almost seems counterintuitive to me that it would be de novo review. I know there's some dispute between the two of you in the briefs as to review. Why wouldn't it be something other than de novo? There are some factual determinations, right? It seems like a fact-intensive inquiry. Sure. The reason it's de novo on the procedural posture of this case is because the trial court's ruling came on cross notions of summary judgment. Summary judgment, which again, it seems counterintuitive to me that this could be handled on summary judgment. I know it happens. It just seems odd to me. It happened here. I mean, if you look at the cases which we've cited, some are decided on summary judgment, some are decided after trial. So it certainly can happen either way. In this case, Judge Chapman chose to make that ruling on summary judgment, which presents the de novo issue for us today. You had very little time left, but I took it up with a question. That's okay. I'll take any other questions. Those were the main points I wanted to hit. Thank you. Okay. I have no questions. All right. Thank you, counsel. Thank you. All right. Thank both of you for your arguments. We will take a recess, and we will get you a decision in due course. Thank you.